IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| JAMIE COSENZA, on behalf of J.M.F.,<br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br>    Defendant. | Case No. 1:14-cv-01214-SLD-JEH |

**Report and Recommendation**

Now before the Court is the Plaintiff's Motion for Summary Judgment (Doc. 10) and the Defendant's Motion for Summary Affirmance (Doc. 14).[1] The Plaintiff, on behalf of her minor son J.M.F. (Claimant), appeals from the denial of her application on behalf of the Claimant for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 USC § 1383(c)(3).[2] This matter has been referred for a Report and Recommendation. The Motions are fully briefed, and for the reasons stated herein, the Court recommends that the Plaintiff's Motion for Summary Judgment be GRANTED, the Defendant's Motion for Summary Affirmance be DENIED, and this matter be REMANDED.[3]

**I**

In February 2011, Plaintiff Cosenza, on behalf of J.M.F., submitted an application for SSI childhood benefits, alleging Claimant's disability beginning the date he was born, November 12, 1998. The application was denied on June 3, 2011, and then denied upon reconsideration on October 5, 2011. After Cosenza requested

---

[1] Cosenza also submitted a Reply Brief (Doc. 16) which the Court has considered.
[2] "The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title." 42 USC § 1383(c)(3).
[3] References to the pages within the Administrative Record will be identified by AR [page number]. The Administrative Record appears as (Doc. 7) on the docket.

a hearing before an Administrative Law Judge (ALJ), a hearing took place before ALJ Diane Raese Flebbe on November 7, 2012.[4] At that hearing, Cosenza, who appeared without professional representation, testified as well as the Claimant. The ALJ issued a Decision on December 4, 2012, finding that the Claimant was not disabled since February 2011. The Appeals Council denied Cosenza's request for review on April 4, 2014, making the ALJ's decision the final decision of the Commissioner. Cosenza filed the instant civil action seeking review of the ALJ's Decision on June 4, 2014.

II

At the time Cosenza applied for SSI childhood benefits on behalf of the Claimant, the Claimant was 12 years old and had been in special education classes since kindergarten.

At the November 7, 2012 hearing, the ALJ explained that the discussion needed to be centered on how the Claimant was doing in the last couple of years because the earliest the Claimant was eligible for SSI payments under the Social Security Act would be March 2011, the first full month following the month in which the SSI application was made.

At the hearing, Cosenza testified that her son was in special education classes because he had Autism, Asperger's, PDD-NOS, and was learning disabled. She testified that his writing was at a second grade level and that he did not enjoy reading because he had difficulty with it. Cosenza testified that he had problems completing work in the classroom, and he was placed in a one-on-one classroom in order for him to be able to do his work. She testified that her son was not really good at asking for help. Cosenza also testified that her son's chores including taking out the garbage and keeping his room picked up. She stated that her son had problems controlling his anger. As for friends, Cosenza testified that the Claimant

---

[4] The hearing first commenced on August 24, 2012. However, the matter was postponed at that time in order for Cosenza to obtain representation.

had one really good friend, and that the two boys played video games. Cosenza said that it was very difficult for her son to make friends at school because he had a lot of problems with social interaction.

Cosenza further testified that her son still had problems showering himself in that he forgot to wash certain areas of his body. The Claimant's asthma, according to Cosenza, was doing a little better and the Claimant had to use his inhaler as needed. Cosenza additionally testified that the Claimant had immune system dysfunctions and missed on average 20 days of school per year. Cosenza also explained to the ALJ that her son had sensory integration, and that it was the Social Security doctor they went to and the school psychologist who diagnosed her son with Asperger's or autism. Finally, she testified that her son had really bad space-time perception.

The ALJ then questioned the Claimant. The Claimant testified that he could most definitely do better in school if he went to sleep earlier. He testified that he and his best buddy at school played a bunch of games when the two would hang out. He also testified to recently getting in a bad fight on the bus which, he said, was caused by a person putting stuff in his face that he did not like. The Claimant explained that he had not really figured out better ways for handling being annoyed instead of getting into a fight. He stated that during the summer, while out of school, he played a bunch of his games, and did not help his mom out more because he was just too addicted to his games. Shortly thereafter, he testified that it was ridiculous how long he played his games. He further testified that he was just not trying at school.

### III

In her 18-page written Decision, the ALJ applied the three-step sequential evaluation process to determine whether the Claimant was a disabled individual under the age of 18. The ALJ determined that the Claimant had not engaged in substantial gainful activity since February 9, 2011 (the application date). The ALJ

3

also determined that the Claimant had the following severe impairments: learning disorder; asthma, and vitamin deficiencies. In her discussion of the Claimant's severe impairments, the ALJ addressed: school psychologist Karen Funk's Asperger's assessment in October 2010 with then currently published form scales; Cosenza's allegations of her son's Asperger's and autism; the Claimant's treating physician's, Dr. Christine Buehler's, notes; a Social Security Request for information form completed by the Claimant's special education teacher in April 2011; a May 2011 consultative psychological examination (referred to by the ALJ as Mental CE); a DDS Childhood Evaluation form dated May 2011; and a November 1, 2012 letter from the Claimant's treating Physician Assistant (PA) Tracy Bongiorno, PA-C, from the Naperville, Illinois clinic the Claimant visited at times for treatment. The ALJ found, "Since there is no such medically determinable evidence and no diagnosis established based on such evidence by an acceptable medical source, it is concluded the claimant does not suffer from a medically determinable impairment of autism, Asperger's, ODD [oppositional defiant disorder] or PDD [pervasive development disorder]." (AR 19).

The ALJ further found that the Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. The ALJ considered Listing 112.02 (Organic mental disorders), 103.03 (Asthma), and Listing 105.08 (Malnutrition due to any digestive disorder). The ALJ discussed a Work Summary and Assessment dated September 13, 2010, Individual Education Plans (IEP), medical evidence of the Claimant's asthma, and medical evidence of the Claimant's vitamin deficiency.

Next, the ALJ found that the Claimant did not have an impairment or combination of impairments that functionally equaled the severity of the listings. In making this finding, the ALJ again discussed Dr. Buehler's treatment notes, PA Bongiorno's notes, three different Teacher Questionnaires from March and September 2011, the opinions of the state agency psychologists and evaluators, the

May 2011 Mental CE, Cosenza's statements, and the Claimant's testimony. The ALJ addressed, separately, each of the six functional equivalence domains in her Decision, finding that the Claimant had marked limitation in attending and completing tasks, and had less than marked limitation in the remaining five domains.

IV

Cosenza argues: 1) the ALJ showed bias and did not fully and fairly develop the record; 2) the ALJ improperly found that Asperger's syndrome and autism were not medically determinable impairments; 3) the ALJ did not substantially support her finding that the Claimant's impairments did not meet or medically or functionally equal Listing 112.02; and 4) the ALJ did not sufficiently explain why she did not give Cosenza's testimony any weight and the ALJ otherwise gave more weight to the wrong sources.[5]

"The final determination of the Commissioner of Social Security after a hearing under [42 USC § 1383(c)(1)] shall be subject to judicial review as provided in section 405(g) of [Title 42] to the same extent as the Commissioner's final determinations under section 405 of [Title 42]." 42 USC § 1383(c)(3). Pursuant to 42 USC § 405(g), the Commissioner's findings must be sustained by the Court if they are supported by "substantial evidence." 42 USC § 405(g). The entire administrative record must be reviewed for substantial evidence which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Skinner v Astrue*, 478 F3d 836, 841 (7th Cir 2007), quoting *Richardson v Perales*, 402 US 389, 401 (1971). The Court may not substitute its judgment for that of

---

[5] The Court has identified the issues as the Commissioner has, as the Court finds the Commissioner accurately and succinctly identified in its Motion for Summary Affirmance the issues raised by Cosenza in her 70+ page Memorandum of Law (Doc. 11). The Court has additionally identified the issues Cosenza raised in her 70+ page Reply Brief (Doc. 16). Though generally, as the Commissioner argues, arguments not raised are waived when raised upon reply, Cosenza is proceeding *pro se*, and so the Court will address those few arguments that are closely related to the arguments she raised in her Memorandum in support of her Motion for Summary Judgment.

the ALJ. *Schmidt v Apfel*, 201 F3d 970, 972 (7th Cir 2000). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v Barnhart*, 297 F3d 589, 593 (7th Cir 2002).

There is a three-step process used to decide whether a child is disabled. *Brindisi ex rel Brindisi v Barnhart*, 315 F3d 783, 785 (7th Cir 2003). First, the ALJ must determine whether the claimant is engaged in substantial gainful activity. 20 CFR § 416.924(a). If not, the ALJ must next determine whether the claimant has a medically determinable impairment that is "severe" or combination of impairments that are "severe." Id. If the claimant does have an impairment or combination of impairments that are "severe," the ALJ next must finally determine whether the claimant has an impairment or combination of impairments that meets or medically equals the severity of a listing or that functionally equals the listing. Id. To find that an impairment functionally equals a listing, the ALJ must assess the claimant's functioning in terms of six domains: 1) acquiring and using information; 2) attending and completing tasks; 3) interacting and relating with others; 4) moving about and manipulating objects; 5) caring for yourself; and 6) health and physical well being. 20 CFR § 416.926a. To functionally equal the listings, the claimant's impairment or combination of impairments must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. Id.

### A

Cosenza argues that the ALJ here did not fully and fairly develop the record. The Commissioner counters that although the evidence of record as to waiver suggests that the ALJ did not obtain a valid waiver from Cosenza, Cosenza cannot show (as she must) that she was either prejudiced or treated unfairly, and instead the ALJ fully and fairly developed the record. The Commissioner identifies the evidence the ALJ gathered and considered in reaching her decision and argues that Cosenza does not identify any evidence that was omitted from the record or issues that were not addressed. In regard to Cosenza's argument that the ALJ was biased

because the latter did not allow her to introduce certain evidence and testimony and constantly interrupted her, the Commissioner argues that Cosenza did not meet her significant burden in showing bias.

The Commissioner is correct that Cosenza did not meet her burden to show the ALJ's bias. An ALJ's actions, in order to sustain a claim of bias, must demonstrate "deep-seated and unequivocal antagonism that would render fair judgment impossible." *Keith v Barnhart*, 473 F3d 782, 790 (7th Cir 2007) (explaining that the ALJ's actions fell far short of the extreme conduct necessary to sustain a claim of bias), quoting *Liteky v United States*, 510 US 540, 546 (1994). The case law, regulations, Social Security Rulings, evidence of record the Commissioner identifies which the ALJ in fact had before her, and the Commissioner's arguments in this regard all amply support the conclusion that that ALJ was not biased in this case.

The Commissioner is also correct that the ALJ fully and fairly developed the record. An ALJ has a "basic obligation to develop a full and fair record," which is particularly so where the claimant is unrepresented by counsel so that the ALJ has a duty to "scrupulously and conscientiously probe into, inquire of, and explore all relevant facts." *Nelson v Apfel*, 131 F3d 1228, 1235 (7th Cir 1997) (internal citations omitted). However, how much evidence to gather is typically left to the reasoned judgment of the Commissioner, and a significant omission is usually required before the court will find that the Commissioner failed to assist a *pro se* claimant in developing the record fully and fairly. *Luna v Shalala*, 22 F3d 687, 692 (7th Cir 1994).

Here, Cosenza has not otherwise identified a significant omission, and it is apparent from Cosenza's arguments that she simply takes issue with the ALJ's explicit acceptance and discussion of certain evidence versus other evidence that was in the record but that was not explicitly referenced and discussed. However, the ALJ's duty to develop a full and fair record does not equate to the ALJ's duty to discuss every piece of evidence in the record. In fact, an ALJ is not required to discuss every piece of evidence in the record. An ALJ must only build a logical

bridge from the evidence to her conclusion, and she need not provide a complete written evaluation of every piece of testimony and evidence. *Murphy v Colvin*, 759 F3d 811, 815 (7th Cir 2014), quoting *Schmidt v Barnhart*, 395 F3d 737, 744 (7th Cir 2005). The evidence of record, the hearing transcripts, and the ALJ's Decision reveal that the ALJ fully and fairly developed the record in this case.

## B

Cosenza next argues that the ALJ improperly found at step two that Asperger's syndrome and autism were not medically determinable impairments. The Commissioner disputes that the ALJ made such an error, and points to the ALJ's discussion of indefinite diagnoses of Asperger's and autism, lack of documentation of such diagnoses, and that the possible or probable diagnoses seemed to just carry forward.

The ALJ fulfilled her obligation to build a logical bridge from the evidence to her conclusion that the Claimant did not suffer from a medically determinable impairment of autism, Asperger's, ODD, or PDD. The bridge she built, however, was not without defect. In her analysis of the evidence on the question of the Claimant's alleged autism and/or Asperger's, the ALJ stated, "The undersigned notes that the claimant's primary care physician expressly disagreed with the diagnosis of autism and Asperger's." (AR 18). While the ALJ cited to treating physician Dr. Buehler's treatment notes that appeared at Exhibits 9F and 14F of the record, nowhere in those notes did Dr. Buehler expressly provide that she disagreed with the diagnoses of autism and Asperger's. Instead, she noted that there was no documentation in the Claimant's chart that he had ever been diagnosed with autism, Dr. Buehler disagreed with Cosenza that vaccines caused autism, she noted that the parents said the Claimant was autistic, and she noted that there was no documentation of the diagnosis. (AR 670-711).

Nevertheless, the ALJ's error was harmless for the very reason put forth by the Commissioner: The ALJ would have discussed the same evidence she *did*

discuss in finding that the Claimant had a severe impairment of a learning disorder. Had she found Asperger's or autism to be medically determinable impairments, the ALJ's finding would have been based upon consideration of the same evidence. The ALJ discussed in sufficient detail the evidence of Asperger's and autism provided by Karen Funk, the May 2011 Mental CE done by Alan W. Jacobs, Ph.D. wherein he found atypical autism, an IEP conference report that stated the Claimant's behavioral issues were related to his "educationally-based diagnoses for Asperger's syndrome," the DDS Childhood Evaluation form which indicated an impairment of atypical autism, and various other relevant school and medical evidence.

Unlike the errors discussed in Subsection C, *infra*, the ALJ's error in representing Dr. Buehler's treatment notes as she detailed did not end her inquiry on the Claimant's application for SSI. Because the ALJ determined that the Claimant had the severe impairment of learning disorder, albeit not Asperger's or autism, the ALJ proceeded to consider numerous documents relevant to the question of whether that severe impairment met, medically equaled, or functionally equaled the relevant listing. Thus, the Commissioner correctly states that the ALJ did not exclude any evidence from her consideration based on her step two finding.

## C

Next, Cosenza argues that the ALJ did not substantially support her finding at step three that the Claimant's impairments did not meet or medically or functionally equal Listing 112.02. The Commissioner argues that here, again, Cosenza has not satisfied her burden to show how her son's impairments met or equaled all of the Listing 112.02's requirements. The Commissioner contends that the ALJ's Decision reflects that she considered most of the evidence Cosenza cites, applied it, and reasonably articulated and supported her findings.

In her Memorandum in support of her Motion for Summary Judgment, Cosenza cites numerous documents from the record in support of her position that the ALJ did not review the entire record which would have, had the ALJ done so,

9

led the ALJ to find that the Claimant met, medically equaled, or functionally equaled the severity of Listing 112.02. Thus, Cosenza argues that the ALJ considered only the evidence that supported her conclusion and disregarded other substantial evidence that supported a finding of disability. Certainly, an ALJ may not ignore entire lines of contrary evidence or selectively consider medical reports. *Myles v Astrue*, 582 F3d 672, 678 (7th Cir 2009); *Terry v Astrue*, 580 F3d 471, 477 (7th Cir 2009).

In her Decision, the ALJ first expressly found that the Claimant had not engaged in substantial gainful activity since February 9, 2011. Second, the ALJ expressly found that the Claimant had the severe impairments of learning disorder, asthma, and vitamin deficiencies. Then, the ALJ expressly found that the Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Listing 112.02 provides:

> Organic Mental Disorders: Abnormalities in perception, cognition, affect, or behavior associated with dysfunction of the brain. The history and physical examination or laboratory tests, including psychological or neuropsychological tests, demonstrate or support the presence of an organic factor judged to be etiologically related to the abnormal mental state and associated deficit or loss of specific cognitive abilities, or affective changes, or loss of previously acquired functional abilities.
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied.
> A. Medically documented persistence of at least one of the following:
>     1. Developmental arrest, delay or regression; or
>     2. Disorientation to time and place; or
>     3. Memory impairment, either short-term (inability to learn new information), intermediate, or long-term (inability to remember information that was known sometime in the past); or
>     4. Perceptual or thinking disturbance (e.g., hallucinations, delusions, illusions, or paranoid thinking); or
>     5. Disturbance in personality (e.g., apathy, hostility); or
>     6. Disturbance in mood (e.g., mania, depression); or
>     7. Emotional lability (e.g., sudden crying); or

8. Impairment of impulse control (e.g., disinhibited social behavior, explosive temper outbursts); or

9. Impairment of cognitive function, as measured by clinically timely standardized psychological testing; or

10. Disturbance of concentration, attention, or judgment;

AND

B. Select the appropriate age group to evaluate the severity of the impairment:

1. For older infants and toddlers (age 1 to attainment of age 3), resulting in at least one of the following:

    a. Gross or fine motor development at a level generally acquired by children no more than one-half the child's chronological age, documented by:
        (1) An appropriate standardized test; or
        (2) Other medical findings (see 112.00C); or
    b. Cognitive/communicative function at a level generally acquired by children no more than one-half the child's chronological age, documented by:
        (1) An appropriate standardized test; or
        (2) Other medical findings of equivalent cognitive/communicative abnormality, such as the inability to use simple verbal or nonverbal behavior to communicate basic needs or concepts; or
    c. Social function at a level generally acquired by children no more than one-half the child's chronological age, documented by:
        (1) An appropriate standardized test; or
        (2) Other medical findings of an equivalent abnormality of social functioning, exemplified by serious inability to achieve age-appropriate autonomy as manifested by excessive clinging or extreme separation anxiety; or
    d. Attainment of development or function generally acquired by children no more than two-thirds of the child's chronological age in two or more areas covered by a., b., or c., as measured by an appropriate standardized test or other appropriate medical findings.

2. For children (age 3 to attainment of age 18), resulting in at least two of the following:

> a. Marked impairment in age-appropriate cognitive/communicative function, documented by medical findings (including consideration of historical and other information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized psychological tests, or for children under age 6, by appropriate tests of language and communication; or
> b. Marked impairment in age-appropriate social functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized tests; or
> c. Marked impairment in age-appropriate personal functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, appropriate standardized tests; or
> d. Marked difficulties in maintaining concentration, persistence, or pace.

20 CFR Part 404, Subpart P, Appendix 1.

When the ALJ considered Listing 112.02, she noted that the Claimant's learning disability was determined early in his grade school years and affirmed in the Work Summary and Assessment of September 13, 2010. The ALJ discussed the Claimant's IEPs and more recent information which showed that he was reading, writing, and doing math all on a 7th grade level at the time he was in 7th grade. The ALJ concluded that such evidence provided support that the Claimant's grade level performance was not limited enough to meet the A criteria of Listing 112.02. With regard to the B criteria of Listing 112.02, the ALJ stated:

> As set forth more fully in the discussion below, there is not sufficient evidence that the child has marked impairment in any two of the

foregoing categories. Therefore, there is no evidence in the medical record that would satisfy the requirements of Listing 112.02, and the B criteria are not satisfied and Listing 112.02 is not met or medically equaled.

(AR 20).

The ALJ then proceeded to determine that the Claimant did not have an impairment or combination of impairments that functionally equaled the severity of the listings. She discussed Dr. Buehler's treatment notes, PA Bongiorno's notes, Teacher Questionnaires, the May 2011 Mental CE, and again noted that the Claimant was reading, writing, and doing mat at a 6th or 7th grade, his current grade, level. (AR 21-24).

Here, the ALJ committed two errors that cannot be considered harmless. First, the ALJ conflated her analysis of whether the Claimant *medically* equaled or *functionally* equaled Listing 112.02. Nowhere in the ALJ's Decision did she indicate that she could simultaneously consider whether the Claimant medically equaled or functionally equaled a Listing. Further, nowhere in its Memorandum in Support of Motion for Summary Affirmance does the Commissioner cite to authority for the simultaneous consideration of medical equivalence and functional equivalence. To the contrary, the ALJ's detailed explanation of the steps she had to address in determining whether the Claimant was disabled make clear that the question of whether a claimant medically equaled Listing 112.02 was to be answered before the question of whether a claimant functionally equaled Listing 112.02. See 20 CFR § 416.924 ("Other rules. We explain other rules for evaluating impairments at all steps of this process in §§ 416.924a, 416.924b, and 416.929. We explain our rules for deciding whether an impairment(s) meets a listing in § 416.925. *Our rules for how we decide whether an impairment(s) medically equals a listing are in § 416.926. Our rules for deciding whether an impairment(s) functionally equals the listings are in § 416.926a*") (emphasis added). Also, the "B criteria" in Listing 112.02 mentioned by the ALJ are

not the same as the six domains listed for purposes of determining functional equivalence. Finally, as set forth above, Listing 112.02 expressly provides that in order to meet the Listing under the B criteria, the child must have "marked impairment" in just one of four categories whereas to functionally equal the Listing, there must be marked limitations in two domains of functioning or an extreme limitation in one domain.

Second, the ALJ based her medical and functional equivalence findings, in part, upon information that is, to put it mildly, unclear in light of the entire record. Although the ALJ is not required to discuss every piece of evidence in the record, the ALJ is expected to discuss evidence that clearly states what the ALJ relies upon it to state. More than once the ALJ citied to Ex. 16F, p. 2 as showing that the Claimant was reading, writing, and doing math at his current grade level of 7th grade. Exhibit 16F is a Request for Administrative Information completed by a Special Education Administrator with the Special Education Association of Peoria County. Cosenza takes issue with the ALJ's reading of that Exhibit. The Court does as well.

The document provided that recent evaluation or testing of the Claimant occurred on 11/2/10. A graph in that document provided the heading of Current Instructional Levels, and under that appeared Reading Level, Math Level, and Written Language Level. (AR 1035). Under the next heading to the right, Standardized Assessment Instrument, appeared AIMSWEB for each of three levels. To the right of that heading was Score/Percentile Rank, and under that heading appeared Gr. 7/3 correct, Gr. 7/3 correct, and Gr. 7/13 words written for the three levels, respectively. Finally, the last heading was Date(s), and under that heading appeared the date of 11/2/11 for each level. There are discrepancies in the document, to say the least. The ALJ interpreted Exhibit 16F, page 2 to provide that the Claimant was performing reading, writing, and math at his then-current grade level of 7th grade. Cosenza interpreted Exhibit 16F to provide that the Claimant was in the 7th percentile in those categories. The Score/Percentile Rank column does not

14

appear to have been filled out with the information *actually* requested. After noting that the Claimant's IEPs for past years indicated that he performed schoolwork below grade level, the ALJ went on to contrast those with just one document from the record that said otherwise. The ALJ found that the Claimant's IQs were not indicative of one who was functionally incapable, and again placed emphasis on Exhibit 16F's information as a factor that countered the allegation of disability.

The ALJ's error in conflating her analysis of medical equivalence with her analysis of functional equivalence and her reliance upon a faulty document prevent the Court from finding that the ALJ built a logical bridge between the evidence and her conclusion. The Court cannot trace the path of the ALJ's reasoning in reaching her conclusion that there was no medical equivalence where her discussion on that issue was buried within her very pointed discussion on the issue of functional equivalence. In turn, that finding was based, in express part, on a document that does not appear to state the proposition for which the ALJ cited it to state. It appears that the ALJ ignored entire lines of contrary evidence where she continually rejected that evidence in favor of Exhibit 16F. Therefore, the ALJ's errors in considering Listing 112.02 were not harmless. See *McKinzey v Astrue*, 641 F3d 884, 892 (7th Cir 2011) (explaining that administrative error may be harmless and thus a court ought not remand a case to the ALJ where it is convinced that the ALJ would reach the same result). The Court notes that in finding error with the ALJ's reliance upon Exhibit 16F, the Court does not deign to re-weigh the evidence, which the Court of course cannot do. See *Young v Barnhart*, 362 F3d 995, 1001 (7th Cir 2004) (stating that the court cannot re-weigh the evidence). In this case, the ALJ's error does not stem from the weight she gave Exhibit 16F, but rather the ALJ's error stems from the fact that she relied to a significant degree on evidence that was at best ambiguous, to the exclusion of a large body of contrary evidence.

# D

Finally, Cosenza argues that the ALJ did not sufficiently explain why she did not give Cosenza's testimony any weight and the ALJ otherwise gave more weight to the wrong sources.[6] Cosenza is mistaken as to the ALJ's alleged error in failing to explain why she did not give Cosenza's testimony any weight. The ALJ discussed Cosenza's allegations that the Claimant was disabled due to Asperger's disorder and autism, and noted how the most persuasive objective clinical evidence did not support that allegation. The ALJ identified instances in which Cosenza did not list autism or Asperger's as part of the Claimant's medical history, the ALJ explained how Dr. Buehler's treatment notes did not provide for a definitive diagnosis of autism or Asperger's, and the ALJ explained why she rejected other evidence that indicated autism and/or Asperger's. The ALJ stated, "As already stated above, the mother's representations are not supported by the objective medical and other evidence; for that reason, the foregoing [May 2011 Mental CE] exam is given little weight." (AR 23-24). Thus, the ALJ's reasons for finding that Cosenza's representations were not supported by the objective medical and other evidence provided the basis for her to give "significant weight" to the Claimant's teachers' Questionnaires. (AR 23). The ALJ explained, "The assessments of the claimant's teachers are given significant weight as they have the opportunity to observe the claimant daily and gauge his response to his IEP and other learning and behavior initiatives." (AR 23). The Court is accordingly able to trace the path of the ALJ's reasoning in regard to the weight she gave the individuals and tangible evidence alike. See *Carlson v Shalala*, 999 F2d 180, 181 (7th Cir 1993) (explaining that the ALJ must "sufficiently articulate his assessment of the evidence to assure us that the ALJ considered the important evidence . . . and to enable us to trace the path of the ALJ's reasoning"). Contrary to Cosenza's assertions, the ALJ more than minimally

---

[6] This final section addresses the arguments Cosenza raised in her Reply Brief. Accordingly, the Court does not have the benefit of a sur-reply from the Commissioner.

articulated her reasons for finding as she did in this regard. Remand is not warranted on this basis. The Court notes that Cosenza is mistaken in arguing that Dr. Jacobs was a treating source whose opinion was entitled to more weight than the ALJ here gave his opinion. The ALJ attempted to clarify that point at the hearing when she reminded Cosenza that the Claimant was sent to Dr. Jacobs for an examination rather than for treatment. (AR 62).

## V

For the reasons set forth above, the Court recommends that the Plaintiff's Motion for Summary Judgment ([Doc. 10](#)) be GRANTED, the Commissioner's Motion for Summary Affirmance ([Doc. 14](#)) be DENIED, and that this matter be remanded for the ALJ to: 1) engage in the *separate* inquiries of medical and functional equivalence in step three; and 2) should the ALJ again rely upon Exhibit 16F, explain with specificity how and why the ALJ is interpreting this ambiguous document.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk within fourteen (14) working days after service of this Report and Recommendation. [FRCP 72(b)(2)](#); [28 USC § 636(b)(1)](#). Failure to object will constitute a waiver of objections on appeal. [*Johnson v Zema Systems Corp*, 170 F3d 734, 739 (7th Cir 1999)](#); [*Lorentzen v Anderson Pest Control*, 64 F3d 327, 330 (7th Cir 1995)](#).

Entered on June 22, 2015.

s/Jonathan E. Hawley<br>
U.S. MAGISTRATE JUDGE